```
                    IN THE UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY


CURTIS BRYANT,                       :
                                     :   HONORABLE JOSEPH E. IRENAS
          Petitioner,                :
                                     :   CIVIL ACTION NO. 01-0021 (JEI)
     v.                              :
                                     :
ROY L. HENDRICKS,                    :            OPINION
Administrator, New Jersey            :
State Prison; and JOHN J.            :
FARMER, JR., Attorney                :
General of New Jersey,               :
                                     :
          Respondent.                :
```

**APPEARANCES:**

CURTIS BRYANT, Petitioner *pro se*
Inmate # 78668
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

ANNE M. MILGRAM, ACTING ATTORNEY GENERAL OF NEW JERSEY
By: Carol M. Henderson, Esq.
Office of the Attorney General
Division of Criminal Justice, Appellate Bureau
P.O. Box 086
Trenton, New Jersey 08625
          Counsel for Respondent

**IRENAS**, Senior District Judge:

Presently before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2254. Petitioner asserts that his counsels' performance, at his trial, on direct appeal, and during his post-conviction relief proceedings at the state level, was constitutionally deficient. For the reasons set forth below, the application will be denied.

I.

A jury convicted Petitioner Curtis Bryant of burglary, robbery, kidnapping, theft, and receiving stolen property on February 1, 1984.  On March 8, 1984, Petitioner was sentenced.  With respect to the kidnapping charge, Petitioner received a thirty year term of imprisonment, with fifteen years parole ineligibility.  For each of the robbery and burglary charges, Petitioner was sentenced to a ten year term of imprisonment, with five years parole ineligibility, but those sentences were to run concurrently with the kidnapping sentence.  The other two charges (theft and receiving stolen property) merged with the robbery charge.

The evidence presented against Petitioner at trial established beyond a reasonable doubt that he, Michael James, and Anthony Dobson broke into the home of Mrs. Bertha Stuessy in Cherry Hill, New Jersey.  The break-in happened on August 25, 1984, around three o'clock in the afternoon, while Mrs. Stuessy was home.[1]  The burglars bound and gagged her, then ransacked the house, taking money, coins, traveler's checks, and other valuables, including a diamond engagement ring, silverware, china, and stamps.

Adrienne Leggett testified that the day after the burglary, she gave Petitioner, James, and Dobson a ride to Mount Holly Coin

---

[1] Mrs. Stuessy was eighty-four years old at the time.

and Stamp Exchange.  While Petitioner was in the store attempting to sell his items, Detective Dennis Holba of the Mount Holly Police arrived.[2]  Detective Holba asked Petitioner for identification, to which Petitioner replied that it was in the car with his wife, referring to Adrienne Leggett, who is not Petitioner's wife.  Mrs. Stuessey later identified the items from the shop-- which included a medallion bearing the name Herbert C. Stuessey-- as belonging to her.

Prior to Petitioner's trial, James and Dobson pled guilty to charges arising out of the burglary of Mrs. Stuessey's home.  In written statements, they identified Petitioner as their accomplice in the burglary and kidnapping of Mrs. Stuessey.  However, both James and Dobson refused to testify at Petitioner's trial.[3]  Detective Brian Malloy, of the Cherry Hill Police Department, testified that he took James' statement on August 26, 1982, and that James stated he had committed the robbery with Curtis Bryant and another person named "Boo."

---

[2] Detective Holba responded to a call from the shopkeeper.

[3] On the first day of Petitioner's trial, the prosecutor called James to testify.  At first James refused to even take the stand, and once he did, he invoked his right to remain silent under the Fifth Amendment.  The presiding judge advised James that he had no Fifth Amendment right to invoke because he had already been sentenced and had not filed an appeal.  When James still refused to testify, the court found him in contempt and sentenced him to six months in prison, the sentence to be served consecutively with the sentence he was serving at the time.  Almost exactly the same scenario then played out with Dobson.  Dobson was called to the stand, attempted to invoke his Fifth Amendment right, and was also sentenced to six months imprisonment for contempt of court.

3

Petitioner testified in his own defense at the trial.  He denied that he had ever been at Mrs. Stuessey's house but admitted that he tried to sell stolen goods that he received from James.  Petitioner testified that on the day of the burglary he was with his then girlfriend, Lisa Young, at her house, and then with her on the bus, until approximately four o'clock in the afternoon.  Lisa Young testified as an alibi witness, corroborating Petitioner's testimony.

Petitioner appealed his conviction and sentence.  The Appellate Division affirmed the judgment in an opinion and order dated December 5, 1986.  Then Petitioner sought Certification to the Supreme Court of New Jersey, but Certification was denied on September 11, 1987.  Petitioner, proceeding *pro se*, sought post-conviction relief ("PCR") pursuant to N.J. Rule 3:22-1, which was denied on November 4, 1988.

Petitioner successfully appealed the decision on his PCR motion, and the case was remanded for rehearing.[4]  On December 24, 1991, Petitioner's motion was denied again.  He again appealed, but this time the lower court's decision was affirmed on June 25, 1993.  Petitioner applied for and was granted

---

[4] The Appellate Division held that under the rules governing PCR proceedings and the law of New Jersey, Petitioner was entitled to counsel but counsel was not provided, despite his request.  Accordingly, the court reversed and remanded to the trial court "for reference of the matter to the Public Defender's Office and for reconsideration of the application by proceedings in which defendant is represented by the Public Defender." (Respondent's Ex. 8b)

Certification by the New Jersey Supreme Court but Petitioner's case was later dismissed on April 14, 1994, upon the Court's determination that Certification was improvidently granted.

On June 17, 1996, more than two years after Certification was denied on the first PCR petition, Petitioner filed a second PCR petition.  The petition raised issues challenging counsel's performance at the trial, on direct appeal, and during the first post-conviction relief proceedings.  The second petition was denied on September 4, 1998, on the ground that the petition was time-barred.  The Appellate Division affirmed that decision on May, 2, 2000.  The New Jersey Supreme Court subsequently denied Certification.  Petitioner filed the present § 2254 Petition on January 18, 2001.[5]

**II.**

Section 2254 provides, in pertinent part, that:

> a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[5]   This Court originally dismissed the Petition on June 26, 2001, concluding that it was an impermissible second petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Then, in May, 2006, Petitioner filed a Motion for Relief from Judgment, explaining that the Court erred when it determined that his Petition of June, 2001, was a second petition.  After considering Petitioner's submissions, and Respondent's answer, the Court was compelled to conclude that an error did indeed occur.  Accordingly, on July 25, 2006, this Court granted Petitioner's motion and ordered the case reopened.

28 U.S.C. § 2254(a).  Petitioner mainly asserts that his Sixth Amendment right to counsel was violated by his various counsel's allegedly deficient performance at trial, on direct appeal, and during his PCR proceedings.[6]  For the following reasons, the Petition must be denied.

First, "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); *see Post v. Bradshaw,* 422 F.3d 419, 423 (6th Cir. 2005) (observing that § 2254(i)'s prohibition is "clear" and "expansive"); *Jacobs v. Moore*, No. 04-0397, 2006 U.S. Dist. LEXIS 31373 at *18 (D.N.J. May 16, 2006) ("a claim that post-conviction relief counsel was ineffective is not cognizable in a section 2254 proceeding").  Therefore the Petition will be denied with respect to the claims challenging counsel's performance during PCR proceedings.

Second, and alternatively, the entire Petition is untimely under § 2244(d)(1).  This section prescribes a one-year window for filing a petition, running from "the date on which the judgment became final by the conclusion of direct review or the

---

[6] Petitioner also claims that the court considering his second PCR petition erred when it held that his second petition was untimely under Rule 3:22-12, of the rules governing PCR petitions in New Jersey.  However, because that claim is not one alleging a "violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), it is not cognizable in this proceeding.  (Petitioner does not assert, nor can this Court conclude, that the asserted error was so grave that it could amount to a deprivation of due process.)

6

expiration of time for seeking such review." § 2244(d)(1)(A). "The time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." § 2244(d)(2). In short, the one year statute of limitations for § 2254 petitions is tolled during the pendency of a properly filed PCR petition.

Applying this rule to the present case, however, is less than straightforward because Petitioner's direct appeal and his first PCR proceeding (including appeals) both concluded before Congress passed AEDPA. The direct appeal of Petitioner's conviction and sentence terminated on September 11, 1987, when the New Jersey Supreme Court denied Certification. Petitioner's appeal of his PCR denial concluded with the Supreme Court's denial of Certification on April 14, 1994. Yet AEDPA's effective date is April 24, 1996.

Under these circumstances, Petitioner had one year from April 24, 1996, to file the instant Petition or file his second PCR petition, which would have tolled time allotted for filing his § 2254 petition. *See Araujo v. Chandler,* 435 F.3d 678, 680 (7th Cir. 2005); *see also Wilson v. Beard,* 426 F.3d 653, 663 n.6 (3d Cir. 2005) (collecting cases applying one year "grace period" to petitions filed after AEDPA but attacking convictions which

7

became final before AEDPA's effective date).  He did neither before his one year window expired on April 24, 1997.  The second PCR petition was filed on June 17, 1997, and the instant Petition was not filed until January 18, 2001.  Accordingly, this § 2254 Petition is time-barred.[7]

### III.

Based on the foregoing, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2254 will be denied.  The Court will issue an appropriate Order.

Dated: January 30, 2007

                                               s/ Joseph E. Irenas
                                               Joseph E. Irenas, S.U.S.D.J.

---

[7] Respondent correctly asserts that *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), would lead to the conclusion that Petitioner's second PCR petition, held untimely by the Superior Court of New Jersey, (and affirmed by the Appellate Division) was not "properly filed," and therefore could not toll the statute of limitations for filing the present Petition.  However, because the second PCR petition was filed after the statute of limitations had completely run, it could not toll the statute regardless of whether it was timely.